OF THE

## STATE OF NEW JERSEY

### ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

**NOVEMBER TERM, 1908.**

---

JAMES C. COLGATE et al., complainants-appellants,

*v.*

UNITED STATES LEATHER COMPANY et al., defendants-respondents.
(No. 35.)

---

ELLEN A. JOHNSTON, executrix, complainant-appellant,

*v.*

UNITED STATES LEATHER COMPANY et al., defendants-respondents.
(No. 33.)

.[Argued June 24th. 1908.  Decided March 1st, 1909.]

1. The power of corporations to consolidate and merge is not to be implied, and exists only by virtue of plain legislative enactment.

2. It follows that there is no right to consolidate without unanimous consent of stockholders, unless the power to consolidate has been conferred by legislation that may be read into the contract of incorporation.

3. Under *P. L. 1893 p. 121,* and *P. L. 1896 p. 309 § 104,* the power to merge two corporations is conferred only where they are organized for the purpose of carrying on business of the same or a similar nature.

4. The purpose for which a company is organized is primarily to be sought in its charter or certificate of incorporation.

5. As between the corporators, the corporate objects expressed in its certificate of incorporation cannot be changed without unanimous consent, unless changed by virtue of some act of legislation which may be read into the contract.

6. Action on the part of the corporation to change the nature of its business pursuant to the authority conferred for that purpose by our General Corporation act, is to be exercised, if at all, by direct proceedings taken pursuant to the statute.

7. The acts authorizing consolidation and merger of corporations (*P. L. 1893 p. 121; P. L. 1896 p. 309 § 104*) neither permit nor contemplate that a change of the objects of incorporation is to be accomplished by means of a consolidation agreement.

8. Upon an examination of the respective certificates of incorporation of the United States Leather Company and of the Central Leather Company—*Held,* that these two corporations were not "organized for the purpose of carrying on business of the same or a similar nature" within the meaning of the act of 1893 (*P. L. 1893 p. 121*), and that the proposed consolidation of the two companies is unauthorized by law and violative of the rights of non-assenting stockholders.

On appeal from orders of the court of chancery advised by Vice-Chancellor Emery, whose opinion is reported in *73 N. J. Eq. (3 Buch.) 72.*

*Messrs. Pitney, Hardin & Skinner,* with whom were *Mr. Lewis L. Delafield* and *Mr. Eugene D. Hawkins* (of the New York bar), for James C. Colgate and others, appellants.

*Mr. Chauncey G. Parker,* with whom were *Mr. Francis C. Huntington, Mr. Thomas N. Rhinelander* and *Mr. Origen S. Seymour* (of the New York bar), for Ellen A. Johnston, executrix, and others, appellants.

*Mr. Robert H. McCarter,* attorney-general, and *Mr. Richard V. Lindabury,* with whom were *Mr. Edward M. Shepard, Mr.*

*L. C. Krauthoff* and *Mr. William H. Harkness* (of the New York bar), for the respondents.

The opinion of the court was delivered by

PITNEY, CHANCELLOR.

These bills of complaint were filed in the court of chancery by certain preferred stockholders of the United States Leather Company, for an injunction to restrain the consummation of a proposed consolidation or merger of that company with the Central Leather Company.

Both corporations were organized under the laws of this state. The United States company was incorporated under the provisions of the General Corporation act of April 7th, 1875 (*Rev. 1877 p. 175; Gen. Stat. p. 907*), and its supplements, by articles of association dated, recorded and filed on February 25th, 1893. An amended certificate of incorporation was made under date April 29th, 1893. The Central company was incorporated under the revised General Corporation act of 1896 (*P. L. 1896 p. 277*), under articles of association dated, recorded and filed April 12th, 1905.

The amended certificate of incorporation of the United States company contains provisions entitling the preferred stock to a cumulative dividend of eight per centum per annum, payable out of the net earnings of the company before any payment is made on the common stock, and in case of non-payment in full of any such yearly dividend, the portion unpaid is to be a charge, without interest, upon the earnings of the company prior to the claims of the common stock; in case of liquidation the preferred stock is to be paid in full at par, together with all earned and unpaid dividends, before any payment is made on the common stock. The common stock is entitled to all dividends declared and payable out of the net earnings after the dividends have been paid upon the preferred stock. And in case of liquidation, the common stock is entitled to the entire assets of the company remaining after the payment in full at par of the preferred stock then outstanding, together with all dividends thereon earned and unpaid.

By the amended certificate it is also provided that the United States company may create and issue debentures to the amount of $10,000,000, and that no other bond or debenture and no mortgage shall be made or granted by that company without the consent of the holders of record of eighty per cent. of the preferred stock of the United States company then outstanding.

In December, 1906, when the Central Leather Company held about ninety per cent. of the preferred stock and about ninety-six per cent. of the common stock of the United States company, a proposed agreement of merger and consolidation was arranged between the boards of directors of the two companies for submission to the stockholders thereof under the terms of an act of March 8th, 1893. *P. L. 1893 p. 121.*

The bills prayed an injunction to restrain the submission of this agreement to the stockholders of the United States Leather Company, and to restrain the taking of any steps to carry the agreement into effect, without the consent of the complainants and other non-assenting preferred stockholders. Upon the filing of the bills, applications for injunctions *pendente lite* were made before Vice-Chancellor Emery. In his opinion (*Colgate* v. *United States Leather Co., 73 N. J. Eq. (3 Buch.) 72,* he over-ruled most of the contentions of the complainants, but held in their favor that the consolidation agreement violated the equitable rights of the preferred stockholders of the United States company, because it required them to accept stock of the consolidated company in lieu of the liability of the United States company to account to the preferred stockholders for accrued and unpaid dividends.

The directors of the defendant companies, acquiescing in this decision, rescinded the proposed merger agreement that had thus been denounced, and proposed for submission to the stockholders a modified agreement bearing date October 10th, 1907, similar in terms to the former agreement, but containing a provision permitting any holder of preferred stock of the United States company to retain

"any lawful right, whether past, present or future, of the holder thereof to demand or receive from the United States Leather Company or the Central Leather Company any money, value or thing by reason of any dividends accrued and unpaid upon the said share."

Thereupon the court modified the preliminary injunctions to such extent as to permit the agreement of October 10th, 1907, to be submitted to the stockholders of the two companies for approval.

From the orders modifying the injunctions the complainants appeal to this court.

The cases present numerous questions that we have not found it necessary to determine, and upon which we must be understood as not committing ourselves.

*First.* The learned vice-chancellor held that the right and power of consolidation must be rested upon the act of March 8th, 1893 (*P. L. 1893 p. 121*), which was not a supplement to the General Corporation act of 1875, but an independent act that still remains unrepealed. Since that act was passed after the organization of the United States company, it is questioned whether an attempted consolidation thereunder without the consent of all the stockholders is not in violation of the contract rights of the stockholders of the United States company, created by its original certificate of organization, dated and filed February 25th, 1893.

*Secondly.* After the passage of the Merger act, and on March 21st, 1893 (*P. L. 1893 p. 444*), a supplement to the General Corporation act of 1875 was enacted to take effect immediately, which in its sixth section authorized any corporation organized under any general law of this state, with the assent of a majority in interest of the stockholders, to amend its original certificate of incorporation by a certificate that should be signed by its president, attested by its secretary under its corporate seal, and in all respects executed in the same manner as its original certificate of incorporation, and enacted that upon being recorded and filed this amended certificate should take the place of the original certificate of incorporation, and be deemed to have been recorded and filed on the date of the recording and filing of the original certificate, provided "that nothing herein contained shall permit the insertion of any matter not in conformity with the law under which such company was organized," &c. It was under this supplement that the amended certificate of incorporation of the United States Leather Company

was made on April 29th, 1893. This certificate in terms declared that the original certificate should be amended "so that it shall read and be as follows," and then follows a copy of the original certificate, dated as of February 25th, 1893, but containing the amendments intended to be made therein.

The clauses providing for the issue of preferred stock and defining the rights of the holders thereof are in the amended certificate, none such being in the original certificate of incorporation.

Thereupon questions are raised whether the act providing for the filing of such an amended certificate permits the making of any agreement of incorporation other than such as could have been made at the date of the original incorporation; whether, in short, corporations organized before the Consolidation act of March 8th, 1893, was passed, could under the act of March 21st, 1893, so amend the certificate of incorporation as to accept the power of consolidation without the consent of all stockholders, and whether, if the act of March 21st admits of such acceptance, the amended certificate of April 29th, 1893, by its terms excluded such an acceptance, or at least amounted to a waiver of the power of consolidation.

*Thirdly.* It is also questioned whether the right of stockholders to object to the exercise of the power of consolidation (supposing such power to have been conferred upon the United States company by the act of March 8th, 1893) belongs only to stockholders who became such prior to the passage of the Consolidation act, or pertains also to stockholders who became such after the passage of the act. The learned vice-chancellor in his reported opinion treated the right of the stockholder to object to the exercise of a power conferred upon the company subsequent to the charter as a separate and distinct personal equity, enforceable by each owner of shares who is such at the time the power is conferred, terminating when he ceases to be a stockholder, and not passing to a transferee of the shares. It is questioned whether this view is correct, and whether the right to object is not rather a property right, inseparably annexed to the ownership of shares, and arising out of, and solely out of, the character of such shares as property, they being the evi-

dence of a right of participation in the business of the company conducted for the purpose specified in the articles of association and for none other.

*Fourthly.* It is questioned whether the proposed consolidation agreement is not voidable at the instance of any stockholder, either because a considerable number of the directors of the one company were also directors of the other, or because both boards of directors were in the control of the Central Leather Company.

*Fifthly.* It is questioned whether the proposed consolidation agreement of December 10th, 1907, does not violate the equitable rights of the preferred stockholders of the United States Leather Company in remitting them to an action against that company or against the Central Leather Company for the ascertainment and enforcement of their rights to dividends accrued and unpaid, and in depriving them of the exemption of their property from the imposition of a mortgage or the issuance of bonds and debentures other than such as are permitted by the amended certificate of incorporation of the United States company.

*Sixthly.* It is questioned whether the proposed consolidation agreement is not vitiated by the fact that it contains a provision for the issuance of a considerable block of the common stock of the consolidated company to Messrs. Armour & Valentine for the apparent purpose of inducing them to take an interest in the company, and without provision for the payment of money or other equivalent value for the shares.

Upon these and certain other questions, that are either treated in the opinion of the learned vice-chancellor or were discussed in the argument before us, we find it unnecessary to express an opinion, because if all these questions could be answered in favor of the respondents, the proposed consolidation must, in our view, be restrained for another reason.

It is entirely well settled that the power of corporations to consolidate and merge is not to be implied, and exists only by virtue of plain legislative enactment. *1 Thomp. Corp.* § *315; 7 Thomp. Corp.* § *3216.*

It follows of necessity that there is no right to consolidate without *unanimous* consent of stockholders, unless the power to consolidate has been conferred by legislation so that the power

may be read into the contract of incorporation. *1 Thomp. Corp.* §§ *75, 343.*

To simplify the discussion that follows, we will assume (in favor of respondents) that the United States Leather Company, as well as the Central Leather Company, had been incorporated after the passage of the act of March 8th, 1893.

That act (*P. L. 1893 p. 121*) provides:

> "That any two or more corporations, organized or to be organized under any law or laws of this state for the purpose of carrying on any kind of business of the same or a similar nature, may merge or consolidate such corporations into a single corporation, which may be either one of said merging or consolidating corporations or a new corporation to be formed by means of such merger and consolidation."

Similar provisions are in the Revised Corporation act of 1896. *P. L. 1896 p. 309 § 104.*

Under either of these acts it is plain that the power to merge two corporations is conferred only where they are organized for the purpose of carrying on business of the same or a similar nature.

The purpose for which a company is organized is primarily to be sought and found in its charter or certificate of incorporation. Our Corporation acts of 1875 and 1896, while permitting the organization of companies to carry on many kinds of business, require that the certificate of incorporation shall state the "objects for which the company is formed." *Gen. Stat. p. 912 § 11 ¶ II; P. L. 1896 § 8 ¶ III.* This statement of the objects of the company is not only a limitation of the franchises that are derived by the corporators from the state, but is likewise a limitation of the purposes to which the corporators as between themselves have agreed that the joint capital shall be devoted.

The amended certificate of incorporation of the United States Leather Company sets forth that the objects for which the company is formed are the manufacture and sale of leather, lumber and belting, including the acquisition of lands and other property necessary to or convenient in connection with that manufacture, and, in general, the engagement in any and all lawful business necessary or convenient in connection with the business of manufacturing and selling leather, lumber and belting, and also.

to the extent necessary or convenient in connection with the business of the company already mentioned, to purchase, acquire, &c., shares of stock of any other company created under the laws of this or any other state or country, and to purchase securities or evidences of debt created by any other corporation. From this language it is clear that the primary object of this company is the manufacture and sale of leather, lumber and belting, and that the other objects mentioned are but incidental.

The certificate of incorporation of the Central Leather Company states the following as the objects for which that corporation is formed: (*a*) To manufacture leather, lumber, belting and any and all other merchandise and commodities of whatsoever nature and character, and all materials, machinery, appliances, products and supplies proper to be used in connection with or incidental to such manufacture, and any commodities which result from or are by-products of the manufacture, production or preparation of leather, lumber, belting or other merchandise or article; (*b*) to engage in any other manufacturing, warehousing, trading or selling business of any kind or character whatsoever; (*c*) to acquire, dispose of, &c., lands, timber, bark, tanneries, mills, warehouses, &c., and any and all articles of property which the corporation may deem to be necessary or convenient to the attainment or furtherance of any of its objects; (*d*) to buy, sell, &c., shares of stock, bonds and other evidences of debt issued or created by any other corporation, whether foreign or domestic, and whether now or hereafter organized; (*e*) to acquire, hold, use, operate, sell or otherwise dispose of, trademarks, patents, inventions, &c.; (*f*) to build, buy, lease or otherwise acquire and maintain and operate without the State of New Jersey, railroads, tramways, canals and terminals, and all appurtenances, together with such other transportation facilities as the corporation may deem necessary for its business operations, and, to the extent permitted by law, to develop, improve and aid any properties, water-powers, industries, manufacturing or merchandising enterprises or companies for transportation by land or water in any of which this corporation may be interested; (*g*) to carry on any other lawful business whatsoever which the corporation may deem proper or convenient to be carried on in

connection with or incidental to any of the foregoing purposes; provided, that the corporation shall not construct, &c., any railroad or telegraph or telephone lines in the State of New Jersey, or engage in any business hereunder which shall require the exercise of the right of eminent domain within said state, unless power in either or any of said respects shall hereafter be conferred upon it by law.

After this statement of the objects of the company, the certificate of incorporation proceeds to declare that "the purpose of the corporation is from time to time to do any one or more of the acts herein set forth as within its authority."

To say nothing of the incidental powers, it is plain that the principal objects and purposes of the Central company are much more extensive than those of the United States company. Clause (*a*) permits it to manufacture not only leather, lumber and belting, but any other merchandise or article. Clause (*b*) declares an independent power to engage in any other manufacturing, warehousing, trading or selling business. Clause (*d*) declares an independent power to buy, sell, &c., shares of stock, bonds and other evidences of indebtedness of any corporation, foreign or domestic. And clause (*e*) permits the general dealing in trademarks, patents and inventions. The objects thus asserted cannot fairly be construed as limited to such as are incidental to the manufacture of leather, lumber or belting; for the incidental purposes and powers are made the subject of separate mention in clauses (*c*) and (*g*).

If the power to build and operate railroads, &c., mentioned in clause (*f*), is to be deemed an independent power, it seems to exclude the company from the act of March 8th, 1893, because of the plain prohibition contained in the proviso of that act.

But, aside from this, the articles of association confer upon the Central company, in plain terms, very extensive primary powers that are not at all within the letter or intendment of the articles of association of the United States company. The majority in interest of the Central Leather Company could, at any time, without violating the contract of incorporation, abandon the leather, lumber and belting business, and embark its resources

in any other kind of manufacturing or trading business, or in a general course of trading in shares of stock, bonds and other corporate obligations.

The certificate of incorporation of the United States Leather Company admits of no such extensive business.

As between the corporators of any company, the corporate objects expressed in its articles of association cannot be changed without unanimous consent, unless changed by virtue of some act of legislation which may be read into the contract. Our General Corporation act authorizes a change in the nature of the business of the company by the vote of two-thirds in interest of the stockholders. *Act of 1875* § *33; Rev. 1877 p. 182; amended P. L. 1893 p. 478 § 10; Gen. Stat. p. 966 pl. 274; Act of 1896 § 27; P. L. 1896 p. 285; amended P. L. 1908 p. 127.* But action on the part of the corportion to change the nature of its business is to be exercised, if at all, by direct proceedings taken pursuant to the statute authorizing it. The acts authorizing consolidation neither permit nor contemplate that a change of the objects of incorporation is to be accomplished by means of a consolidation agreement.

The merger agreement now before us provides that after the consolidation the resulting company (to be known still as the Central Leather Company) shall possess the powers, privileges and rights granted by and shall be governed by and be subject to the certificate of incorporation of the Central Leather Company, a copy of which is thereunto annexed and made a part thereof. We deem it plain that this would constitute a substantial diversion of the assets of the United States company from the objects and purposes limited in its articles of association, and a violation of the letter and spirit of the Consolidation act, which permits the consolidation only of companies organized for the purpose of carrying on business of a similar nature.

There seems to be no reported decision in this state upon the subject. And since the matter depends upon a mere interpretation of statute law, cases decided in other jurisdictions and upon other statutes can be of little service. *New Orleans Gaslight Co.* v. *Louisiana Light Co., 4 Wood 90,* and *Chevra Bnai*

*Israel* v. *Chevra Bikur Cholim, 24 N. Y. Misc. 189,* are, however, decisions tending to support the view above expressed.

If we were to look beyond the objects expressed in the respective certificates of incorporation, and deal with the purposes of the United States Leather Company and of the Central Leather Company, respectively, as manifested by their actual course of business, it does not seem to us that the case would be bettered for the proposed consolidation. For, it appears, the purpose of those interested in the Central company was simply to secure control of the United States company and reorganize it in such fashion as to get rid of the limitations contained in its certificate of organization respecting the rights of preferred stockholders and the prohibition of mortgage indebtedness.

But in the present case we do not need to go beyond the declaration of purposes as contained in the respective articles of association, it being manifest from these that the two corporations were not organized for the purpose of carrying on business of the same or a similar nature, within the meaning of the act. *P. L. 1893 p. 121.* It results that the consolidation is unauthorized by law and violative of the rights of the complainants.

This point seems not to have been argued before the learned vice-chancellor, but it was raised in argument in this court, and while it is contended by the respondents that the point was not made in the bills of complaint, we think it is sufficiently covered by the averments that the merger and consolidation of the corporations cannot be lawfully accomplished under the provisions of the acts of the legislature referred to, and that the proposed consolidation without the consent of the complainants is an invasion of their rights, and without authority of law as against the complainants.

The orders under review should be reversed, with costs, in the court below and in this court, and the record remitted for further proceedings in accordance with the views above expressed.

No. 33—
*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, GRAY, DILL—14.

No. 35—
*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, GRAY, DILL—14.