GENERAL INV. CO. v. BETHLEHEM STEEL CORP. et al.

(District Court, D. New Jersey. February 6, 1918.)

1. CORPORATIONS ☞382—CERTIFICATES OF INCORPORATION—STATEMENT OF OBJECTS—NATURE.

A certificate of incorporation, containing a statement of the objects of the corporation, is a limitation of the purposes to which the corporators, as between themselves, have agreed that the joint capital shall be devoted.

2. CORPORATIONS ☞196—RESOLUTIONS—VALIDITY—STOCKHOLDERS VOTING.

The question whether the requisite number of qualified stockholders were present and affirmatively voted for a resolution is one of fact, and, where the resolution was adopted by the requisite number, it is not subject to attack on the ground that it was not passed at a legally constituted meeting of the stockholders, because the inspectors of election failed to examine the books, to determine whether the persons voting were registered stockholders.

3. CORPORATIONS ☞370(3)—POWERS—CHARTERS.

A corporation possesses only such powers as have been expressly conferred by its charter or certificate of incorporation, or such as are necessary for carrying such powers into effect; but those powers arising by implication are as much within the grant as those clearly expressed.

4. CORPORATIONS ☞374—POWERS—IMPLIED POWERS—"NECESSARY."

In determining whether powers are implied as necessary to those granted to a corporation, the word "necessary" should not be defined as indispensable, but as including those powers suitable and proper for carrying into execution the ones granted.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessary.]

5. CORPORATIONS ☞484(3)—POWERS—EXECUTION OF CONTRACTS OF GUARANTY.

A corporation organized under the New Jersey Corporation Act (P. L. 1896, p. 277), which in sections 2, 7, 49, and 51 authorized corporations to exercise all the powers and privileges contained in the act, in addition to those enumerated in their certificates of incorporation, so far as the same are necessary or convenient to the attainment of the objects set forth in such certificates, and empowered corporations to purchase, sell, pledge, or otherwise dispose of the shares of stock of other companies, was under its certificate of incorporation empowered to acquire the capital stock of corporations engaged in any of the businesses mentioned in the certificate, which included steel and coke business, to aid in any manner any corporation whose stocks it owned, and to borrow money and issue obligations for moneys borrowed. *Held,* that such corporation,

which owned the stock of a subsidiary steel company, had implied authority to guarantee bonds issued to take up a note given in payment for property of a coke company, whose property was acquired for the benefit of the steel company, and to furnish it with a supply of coke and gas, for the corporation might have advanced the money for the purchase.

6. CORPORATIONS ⟨⟩297—AUTHORITY OF DIRECTORS—INTRA VIRES TRANSACTIONS.

In view of Corporation Act N. J. § 12, vesting the management of corporate affairs in a board of directors, the propriety of the directors' action as to an intra vires matter is, in the absence of fraud or breach of trust, exclusively a question for the directorate.

7. CORPORATIONS ⟨⟩484(3)—CONTRACTS OF GUARANTY—AUTHORITY TO EXECUTE.

Corporation Act N. J. § 6, as amended by Act March 26, 1907 (P. L. p. 35), declaring that incorporations are authorized for any lawful purpose whatever, excepting insurance and surety companies, is not an inhibition on the authority of a corporation organized under the act to guarantee bonds issued by one of its subsidiaries; the purpose of the section being merely to prevent insurance and surety companies from incorporating under the act.

In Equity. Bill by the General Investment Company against the Bethlehem Steel Corporation and others. On petition for preliminary injunction. Writ denied.

McCarter & English, of Newark, N. J. (Elijah N. Zoline, of New York City, and Robt. H. McCarter and Arthur F. Egner, both of Newark, N. J., of counsel), for complainant.

Pitney, Hardin & Skinner, of Newark N. J. (John R. Hardin, of Newark, N. J., of counsel), for defendant Bethlehem Steel Corp.

RELLSTAB, District Judge. The complainant, a Maine corporation, is a holder of common stock of the Bethlehem Steel Corporation, a New Jersey corporation. The general purposes of the bill, as stated by complainant's counsel, are:

"To enjoin the Bethlehem Steel Corporation from guaranteeing the bonds and obligations of other corporations and mortgaging its property to secure such guaranties and the debts of other corporations, on the ground that the corporation has no authority to do the things complained of; also, to declare invalid the guaranty by the defendant Bethlehem Steel Corporation of the bonds of the Eastern Coke Company, which have been purchased by the defendants Mellon National Bank and Union Trust Company of Pittsburgh."

The present application (on an order to show cause) is for a preliminary injunction to restrain the Bethlehem Steel Corporation (hereinafter called the Bethlehem Corporation) from guaranteeing the obligations of any other corporation, under its resolution passed by the stockholders of that company on April 3, 1917, and was heard on bill, answer, and affidavits. This resolution, as will presently appear, is not the one under which the guaranty of the Eastern Coke Company's bonds was made, which was passed previously, to wit, March 21, 1917, and which is set forth at length in a subsequent part of this opinion; but, as the attack of the bill is not limited to this specific guaranty, so much of that resolution as relates to guaranties of the

bonds of other corporations, or indicates proposed corporate action in respect to such bonds, is here set forth:

"Resolved, that the stockholders of Bethlehem Steel Corporation do hereby consent that said corporation mortgage and pledge the property, rights, privileges and franchises now owned by it or which it may hereafter acquire, or such part thereof as its board of directors may determine and as shall be described and specified in the mortgage or mortgages or deed or deeds of trust or instrument or instruments of pledge by which said mortgage and pledge shall be created, or as shall be subjected thereto in accordance with provisions therein contained, for any or all of the following purposes as said board of directors may, in its discretion, determine:

(a) To secure the payment of the principal and interest of bonds or other obligations of said corporation;

(b) To secure the payment of bonds or other obligations of subsidiary companies, now outstanding or hereafter issued and for the payment of which said corporation is now or may hereafter become liable; and

(c) To secure the guaranty by said corporation of the principal and interest, or both, of bonds or other obligations of any subsidiary company or companies: Provided, however, that the aggregate principal amount of bonds or other obligations the payment of which or the guaranty of the payment of which shall be secured by said mortgage and pledge (including bonds and other obligations issued or reserved for issue to pay off or retire existing bonds or other obligations of the corporation or of subsidiary companies) shall not exceed at any one time $200,000,000 or an amount equal to twice the aggregate amount of the capital stock of said corporation of all classes at the time outstanding, whichever shall be the larger amount; and provided, further, that said aggregate principal amount of bonds or other obligations, secured and to be secured as aforesaid shall not exceed in any event at any one time $200,000,000 without the consent of the holders of two-thirds of the capital stock of said corporation of each class having voting powers represented and voted upon in person or by proxy at a meeting specially called for the purpose of procuring such consent, or, if such purpose be specified in the notice thereof, then at any annual meeting."

[1] The Bethlehem Corporation was incorporated about December 10, 1904, under the New Jersey act concerning corporations (Rev. 1896) P. L. 1896, p. 277, and the acts supplementary thereto and amendatory thereof, and in the third section of its certificate of incorporation, as amended about February 17, 1917, the objects of the corporation are stated to be:

"To manufacture, buy, sell, or otherwise deal or traffic in iron, steel, manganese, nickel, copper, coal, coke, lumber, and other metals, minerals, or materials, and all or any products or articles, consisting or partly consisting of iron, steel, manganese, nickel, copper, coal, coke, lumber, or other metals, minerals or materials. To acquire, own, lease, occupy, use, develop, or deal in any lands containing coal, iron, manganese, nickel, copper, stone, or other ores or minerals, gas or oil, and in woodlands or other lands, and to mine or otherwise extract or to remove coal, ores, stone, timber, gas, oil, or other minerals, materials, or substances from any lands. To construct or purchase, or otherwise acquire, buildings, machinery, engines, apparatus, locomotives, cars, railroad equipment, railroads, docks, ships, elevators, water works, gas works, electric works, bridges, viaducts, aqueducts, canals, and any other waterways, and any other means of transportation, and to sell or otherwise dispose thereof, or to maintain or operate the same, except that the corporation shall not maintain or operate any railroad or canal within the state of New Jersey. To manufacture, buy, sell, or otherwise deal or traffic in ordnance, large and small arms, armor, armor plate, explosives, munitions, and stores of war, and military, naval, maritime, marine, and submarine materials, substances, appliances, engines, articles, and contrivances of any and every sort. To design, build, construct, repair, operate, maintain, buy, sell,

charter, or otherwise manage, deal, or traffic in ships, boats, and vessels of all kinds, and their equipment, furnishings, and appurtenances, armor and armament, boilers, engines, tackle, and apparel, together with all materials, articles, tools, machinery, docks, and appliances entering into or suitable and convenient for the construction, equipment, maintenance, or operation thereof. To transport goods, merchandise, and passengers upon land or water, to own, operate, and maintain steamship lines, vessel or other lines, for water transportation. To construct, purchase, lease, or otherwise acquire, maintain, operate, or use wharves, warehouses, piers, docks, dry docks, floating docks, and all other structures, buildings, or works. To apply for, obtain, register, purchase, lease, or otherwise to acquire, and to hold, use, own, exercise, develop, operate, and introduce, and to sell, assign, grant licenses in respect of, or otherwise dispose of, any trade-marks, trade-names, patents, or inventions, improvements, or processes used in connection with or secured under letters patent of the United States or elsewhere, or otherwise, in relation to any of the other purposes herein stated, and to acquire, use, exercise, or otherwise turn to gain licenses in respect of any such trade-marks, patents, inventions, processes, and the like, or any such property or rights. To engage in any manufacturing, mining, construction, transportation, or other business connected with any of the purposes herein stated, but not to engage in any business hereunder which shall require the exercise of the right of eminent domain within the state of New Jersey. To act as financial, commercial, or general agent for other corporations engaged in business similar or allied to that of this corporation, or in any business in which any product of this corporation is employed, or in the production of anything used in the business of this corporation. To enter into any contracts or arrangements with any government or authority, national, state, municipal, local, or otherwise, conductive to the other purposes herein stated, and to obtain from any such government or authority any and all rights, privileges, grants, or concessions relating to any of the objects herein stated. To carry out, exercise, comply with, and enforce any such contracts, rights, privileges, and concessions. To subscribe for, acquire, invest in, sell, or dispose of any bonds, securities, or obligations of any nature issued by any such government or authority, or guaranteed thereby. To acquire by purchase, subscription, or otherwise, and to invest in, hold, or dispose of stocks, bonds, securities, or other obligations of any other corporation or corporations, domestic or foreign, formed for, or then or theretofore engaged in, any one or more of the kinds of business, purposes, objects, or operations herein stated, or owning or holding or producing any property of any kind herein mentioned, or of any corporation owning or holding the stocks or obligations of any such corporation, and while owner of any such stocks, bonds, securities, or other obligations to exercise all the rights, powers, and privileges of ownership, including the right to vote thereon for any and all purposes. To aid in any manner any corporation whose stock, bonds, or other obligations are owned or held by it, or in which, or in the stocks, bonds, securities or other obligations of which, it is in any way interested, and to do any other acts or things for the preservation, protection, improvement, or enhancement of the value of any such stocks, bonds, securities, or obligations. To borrow money. To issue bonds, debentures, or obligations of the corporation from time to time, for moneys borrowed or in payment for property purchased, or for any of the other objects or purposes of the corporation. To secure the same by mortgage or mortgages or deed or deeds of trust upon, or pledge of any or all of the property, rights, privileges, or franchises of the corporation, wheresoever situated, acquired or to be acquired, and to sell or otherwise dispose of any or all such bonds, debentures and obligations: Provided that no such mortgage or pledge shall be made without the consent of the holders of two-thirds of the capital stock of the corporation of each class having voting powers represented and voted upon in person or by proxy at a meeting specially called for the purpose of procuring such consent, or, if such purpose be specified in the notice thereof, then at any annual meeting; but no approval of stockholders shall be requisite in respect of the execution of any purchase-money mortgage or any other purchase-money lien, or in respect of any pledge of assets in the ordinary course and conduct of the business of the corporation. To conduct its business in all or any of its

branches in the state of New Jersey and in other states of the United States of America, and in the territories and the District of Columbia, and in any or all dependencies, colonies, or possessions of the United States of America, and in foreign countries, and for or in connection with such business, to hold, possess, purchase, mortgage, and convey real and personal property and to maintain offices and agencies either within or anywhere without the state of New Jersey. In general, to do any and all things, and exercise any and all powers, which it might now or hereafter be lawful for the corporation to do or exercise under and in pursuance of the act of the state of New Jersey under which the corporation is incorporated, or any act amendatory thereof or supplemental thereto that may be now or hereafter in force, or any other act that may be now or hereafter applicable to the corporation. The board of directors shall have plenary power and discretion to sell, lease, or otherwise dispose of, from time to time, any part or parts of the properties of the corporation, and to cease to conduct the business connected therewith or again to resume the same, as it may deem best."

This statement of objects is "a limitation of the purposes to which the corporators as between themselves have agreed that the joint capital shall be devoted." Colgate v. United States Leather Co. (E. & A.) 75 N. J. Eq. 229, 236, 72 Atl. 126, 19 Ann. Cas. 1262.

[2] The first contention is that the resolution was not properly passed at a legally constituted meeting of the stockholders. The alleged infirmity in this respect is said to be that the inspectors of election, acting at such meeting, did not examine the stockbooks to ascertain whether the persons voting were registered stockholders. No law is referred to as requiring such an examination. Whether the requisite number of qualified stockholders were present and affirmatively voting for said resolution is a question of fact. The affidavits used on the hearing hereof show that there were present, and affirmatively voting for the passage of the resolution, the requisite number of registered stockholders. Therefore this contention is without merit.

The remaining contention, and the one mainly pressed on the argument and in the briefs, is that the Bethlehem Corporation has no power to guarantee the obligations of other corporations. The Bethlehem Corporation is not an operating company. It holds the capital stock, other than directors' shares, of other corporations which are authorized to engage in, and which carry on, one or more of the objects mentioned in its certificate of incorporation. Some of these corporations also hold the capital stock of other corporations, which also are authorized to, and do, engage in one or more of those objects. The largest of these corporations, whose stocks are held by the Bethlehem Corporation, is the Bethlehem Steel Company, a Pennsylvania corporation (hereinafter called the Bethlehem Company). The stock so held by the Bethlehem Corporation is its trading capital.

Prior to the events now to be stated, in carrying out the objects of its incorporation, the Bethlehem Company obtained coke and gas from the Lehigh Coke Company (hereinafter called the Lehigh Company). On February 9, 1917, the Bethlehem Company, to be assured of a continuance of the supply of coke and gas from such source, purchased from the Pittsburgh By-Products Coke Company all the capital stock of the Lehigh Company for the sum of $8,000,000, of which $7,000,-000 was represented by the Bethlehem Company's promissory note,

payable May 7, 1917. The payment of this note was secured by a pledge of all the capital stock so purchased.

The Bethlehem Company, deeming it unwise to pay that promissory note out of its cash working capital, proposed to exchange therefor 14-year 5 per cent bonds, aggregating a like sum, to be issued by a new coke company to be organized to acquire the properties of the Lehigh Company. This offer was accepted by the defendant Union Trust Company of Pittsburgh, the then holder of the promissory note, upon the condition that the payment of the bonds, principal and interest, should be guaranteed by both the Bethlehem Company and the Bethlehem Corporation. This condition was agreed to by the latter two companies.

On February 23, 1917, the Bethlehem Company organized the Eastern Coke Company under the laws of Pennsylvania (hereinafter called the Eastern Company), to which the Lehigh Company conveyed all of its properties. All the capital stock of the Eastern Company, except directors' shares, was taken and is held by the Bethlehem Company. Subsequently, the $7,000,000 14-year bonds referred to, and secured by a mortgage on its properties so acquired from the Lehigh Company, were issued by the Eastern Company and became the property of the Bethlehem Company in distribution upon a reduction of the capital stock of the Lehigh Company. Thereupon the Bethlehem Company and the Bethlehem Corporation respectively indorsed their guaranties upon the bonds, and on April 20, 1917, the same were delivered to the defendant Union Trust Company of Pittsburgh, in exchange for the promissory note referred to. The guaranty by the Bethlehem Corporation was made under the authority of a resolution passed by its directors on March 21, 1917, of which the following is a copy:

"Whereas, this corporation is, and for many years past has been, the owner of all of the shares of stock of Bethlehem Steel Company, hereinafter termed the 'Steel Company' (except directors' qualifying shares), and the Steel Company in the conduct of its manufacturing business has received a large part of its supply of coke and of gas from the by-products coking plant formerly of Lehigh Coke Company, situate at South Bethlehem, Pa., contiguous to the properties of the Steel Company, the said plant having been constructed primarily for the purpose of supplying coke and gas to the Steel Company; and

"Whereas, the Steel Company has deemed it advantageous and essential in the proper conduct of its business that it acquire the entire control of the management and operation of said by-product coking plant, and for that purpose has purchased the entire capital stock of said Lehigh Coke Company, and, in order to make part payment therefor, borrowed upon its short time collateral promissory note the sum of seven million dollars ($7,000,000), which obligation the Steel Company and this corporation are, each of them, desirous shall be promptly paid and the indebtedness evidenced thereby funded so that the same may be made payable over a series of years; and

"Whereas, the Steel Company has caused or is about to cause said coking plant to be sold and transferred to said Eastern Coke Company, of which it owns all the outstanding capital stock, in consideration whereof the Steel Company will acquire seven million dollars ($7,000,000) of the first mortgage five per cent. fourteen-year sinking fund gold bonds of Eastern Coke Company, secured by mortgage upon the properties and assets of said Eastern Coke Company, and the Steel Company has arranged with the holder of said collateral promissory note to accept payment of said note by the delivery to such holder on or before May 7, 1917, of said seven million dollars ($7,000,000) of first mortgage five per cent. fourteen-year sinking fund gold

bonds of Eastern Coke Company, on condition, however, that the payment of the principal thereof and interest thereon shall be guaranteed by the Steel Company and by this corporation; and

"Whereas, the board of directors of this corporation deems it advisable that payment of said indebtedness of seven million dollars ($7,000,000) now owing by the Steel Company be provided for, and that the arrangement proposed by the Steel Company is an advantageous one and to the best interest of the Steel Company and of this corporation; and

"Whereas, the form of said bonds and of the mortgage securing the same. and, as well, the form of guaranty to be executed by the Steel Company, and by this corporation have been duly submitted to and considered by this board:

"Resolved, that, in order to provide for the payment of seven million dollars ($7,000,000) owing by the Bethlehem Steel Company, and to aid said company advantageously to sell and dispose of said seven million dollars ($7,000,000) first mortgage five per cent. fourteen-year sinking fund gold bonds of the Eastern Coke Company, this corporation guarantees the punctual payment of the principal and interest of said seven million dollars ($7,000,000) of bonds.

"Resolved, that the guaranty to be indorsed upon each of the permanent bonds of said issue of seven million dollars ($7,000,000) of first mortgage five per cent. fourteen-year sinking fund gold bonds of Eastern Coke Company shall be substantially in the following form:

" 'Guaranty.

" 'Bethlehem Steel Corporation, a corporation created and existing under the laws of the state of New Jersey, for value received, does hereby guarantee to the holder, or, if registered, to the registered owner, of this bond, the punctual payment of the principal of and interest on said bond, as the same shall become or be made due and payable according to the terms of said bond and of the indenture therein mentioned, dated February 1, 1917, made by Eastern Coke Company to the Union Trust Company of Pittsburgh, as trustee, to secure the same.

" 'In witness whereof, said Bethlehem Steel Corporation has caused its corporate seal to be hereunto affixed, and to be attested by its secretary or an assistant secretary, and these presents to be signed by its president or a vice president, as of the first day of February, 1917.

" 'Bethlehem Steel Corporation, by ——————.

" 'Attest:  ——————.'

"Resolved, that the president or one of the vice presidents of this corporation be and hereby they are, severally and respectively, authorized and directed from time to time, as said bonds shall be authenticated by the trustee, to execute said guaranty in the name and on behalf of the Bethlehem Steel Corporation (not exceeding, however, the aggregate principal sum of seven million dollars ($7,000,000), and that the secretary or one of the assistant secretaries of this corporation be and hereby they are, severally and respectively, authorized and directed, at the same time, to affix to every such guaranty the corporate seal of the Bethlehem Steel Corporation, duly attested by the signature of such secretary or assistant secretary.

"Resolved, that, pending the preparation and execution of the permanent bonds, the officers of this corporation, hereinbefore named, be and hereby they are, severally and respectively, authorized and directed, whenever any temporary bond or bonds issued under said first mortgage of the Eastern Coke Company shall be authenticated by the trustee, to execute on said bonds (not exceeding, however, the aggregate principal sum of seven million dollars [$7,000,000]), said guaranty, substantially in the form hereinbefore set forth, with appropriate variations, omissions, and additions, in the name of and on behalf of Bethlehem Steel Corporation, and to affix to every such guaranty the corporate seal of Bethlehem Steel Corporation, duly attested by the signature of such secretary or assistant secretary.

"Resolved, that the proper officers of this corporation be and hereby they are authorized and directed to do such other acts and things as may be requisite fully to carry out and perform upon the part of this company the terms and provisions of this resolution."

It is this guaranty by the Bethlehem Corporation that furnishes the basis of the principal attack made by the present bill.

[3, 4] In general, a corporation possesses only such powers as have been expressly conferred by its charter or certificate of incorporation, or by statutes applicable thereto, or such as are necessary for carrying into effect the objects and powers expressly granted. Green Bay & Minnesota R. R. Co. v. Union Steamboat Co., 107 U. S. 98, 100, 2 Sup. Ct. 221, 27 L. Ed. 413; Penna. R. R. Co. v. St. Louis, Alton & Terre Haute R. R. Co., 118 U. S. 290, 308, 6 Sup. Ct. 1094, 30 L. Ed. 83; State of New Jersey, etc., v. Hancock, Collector, etc. (E. & A.) 35 N. J. Law, 537; State of New Jersey v. Atlantic City & Shore R. R. Co. (E. &. A.) 77 N. J. Law, 465, 72 Atl. 111. The powers which are thus necessary arise by implication, and are as much within the grant as those clearly expressed (Rabe v. Dunlap, 51 N. J. Eq. 40, 45, 25 Atl. 959; Tod v. Kentucky Union Land Co. [C. C.] 57 Fed. 47, 50; Marbury v. Same, 62 Fed. 335, 10 C. C. A. 393), and "the word 'necessary' in this connection does not mean 'indispensable.' It embraces all things suitable and proper for carrying into execution the powers granted." State of New Jersey, etc., v. Hancock, Collector, etc., supra.; Ellerman v. Chicago Junction Rys. & Union Stockyards Co., 49 N. J. Eq. 217, 241, 23 Atl. 287; McCauley v. Ridgewood Trust Co., 81 N. J. Law, 86, 91, 79 Atl. 327.

[5] The power to guarantee the bonds of another corporation, whether independent or subsidiary, is not expressly granted to the Bethlehem Corporation by its certificate. Nor is express power to guarantee given by the New Jersey act (P. L. 1896) under which that corporation was organized, nor by any other legislation of that state. However, by this act of 1896 (section 2) corporations are authorized to exercise all the powers and privileges contained in the act, in addition to those enumerated in their certificates of incorporation, "so far as the same are necessary or convenient to the attainment of the objects set forth in such * * * certificate of incorporation." This section further provides that "no corporation shall possess or exercise any other corporate powers, except such incidental powers as shall be necessary to the exercise of the powers so given." By section 6, as amended by P. L. 1907, p. 35, incorporations are authorized "for any lawful purpose * * * whatever," excluding insurance and surety companies and certain other companies carrying on businesses not involved in the present controversy. By section 7 a corporation is authorized to "conduct business, * * * hold, purchase, mortgage and convey real and personal property out of this state [New Jersey], provided such powers are included within the objects set forth in its certificate of incorporation." By section 49 it is empowered to purchase property necessary for its business, or the stock of any company "owning, mining, manufacturing or producing materials, or other property necessary for its business," subject to certain limitations not pertinent to this controversy. By section 51 corporations are empowered to purchase, sell, pledge, or otherwise dispose of "the shares of the capital stock of, or any bonds, securities or evidences of indebtedness creat-

ed by any other corporation * * * and while owner of such stock * * * exercise all the rights, powers and privileges of ownership, including the right to vote thereon."

While some of these sections, notably 49 and 51, have undergone legislative changes since their enactment in 1896 (see N. J. P. L. 1913, pp. 28, 32; 1915, p. 180; 1917, p. 566), yet, so far as affects the power of the Bethlehem Corporation in respect to the acts challenged in this bill, the powers hereinbefore mentioned in substance and legal effect are as stated. As neither the statutes nor the certificate of incorporation expressly authorized the making of a guaranty, the validity of the Bethlehem Corporation's guaranty of the Eastern Company's bonds, here specifically challenged, as well as that corporation's power to guarantee bonds of other of its subsidiaries and their subsidiaries, depends upon whether the same is necessary or convenient to the attainment of one or more of the objects expressly set forth in the Bethlehem Corporation's certificate of incorporation.

Among the numerous objects mentioned in the certificate referred to, it is noted that the Bethlehem Corporation was empowered (a) to acquire the capital stock of other corporations authorized to engage in one or more of the kinds of business, objects, or operations mentioned in its certificate, or of corporations which owned the capital stock of any such corporations; (b) to aid in any manner any corporation whose stocks it owned "or in which or in the stock * * * of which it is in any way interested, and to do any other acts or things for the preservation, protection, improvement or enhancement of the value of any such stocks; * * * (c) to borrow money; * * * to issue obligations * * * for moneys borrowed or in payment for property purchased or for any of the other objects or purposes of the corporation; to secure the same by mortgage * * * upon or pledge of any or all of the property, * * * of the corporation: * * * Provided that no such mortgage or pledge shall be made without the consent of the holders of two-thirds of the capital stock of the corporation of each class having voting powers;" (d) to conduct its business or any part thereof in any of the states of the United States of America, and in connection therewith to purchase, hold, mortgage, and convey real and personal property within or without the state of New Jersey; and (e) in general to do all things lawful under the legislation of New Jersey, now or hereafter in force applicable to that corporation.

If the Bethlehem Corporation, instead of its subsidiary, the Bethlehem Company, had purchased the capital stock of either the Lehigh Company or the Eastern Company, and had issued its own bonds to pay the $7,000,000 promissory note representing part of the purchase price of the stock, such purchase of stock and issue of bonds would have been clearly within its corporate power; or if, instead of guaranteeing the payment of the Eastern Company's bonds, the Bethlehem Corporation had loaned the $7,000,000 to the Bethlehem Company and the latter had used it in paying for the stock of the Lehigh Company, such loan unquestionably would have been within the Bethlehem Corporation's powers, for that character of aid is expressly granted. By its guarantee of the Eastern Company's bonds, the Bethlehem Com-

pany avoided the necessity of using its cash working capital, or increasing its indebtedness by borrowing money to meet the greater part of the purchase price of the capital stock of the Lehigh Company; and the Bethlehem Corporation, without using its cash or borrowing powers, was enabled to aid the Bethlehem Company in consummating said purchase, without the use of cash by the latter, and in securing for it an unhampered supply of coke and gas, materials essential to the carrying out of its operations, thereby enhancing the value of the Bethlehem Company's stock which, as already noted, was owned by the Bethlehem Corporation.

[6] As an aid, it was as effective as if the cash had been advanced; and, as a business proposition, it seemingly was a preferable mode of taking care of its purchase, as it deferred the payment of cash for such purpose, thus permitting its use for other objects. But whether it was good business—a matter intra vires—is, in the absence of fraud or breach of trust, a question to be determined exclusively by the board of directors. New Jersey Corporation Act, supra, § 12; Berger v. United States Steel Corporation, 63 N. J. Eq. 809, 829, 53 Atl. 68; Hawes v. Oakland, 104 U. S. 450, 459, 26 L. Ed. 827; Wilson v. American Ice Co. (D. C.) 206 Fed. 736, 743; United Copper Securities Co. v. Amalgamated Copper Co., 244 U. S. 261, 263, 264, 37 Sup. Ct. 509, 61 L. Ed. 1119.

[7] The complainant argues that this guaranty is a surety transaction within the prohibition of section 6 of the New Jersey Corporation Act. That section, as already noted, excludes insurance and surety companies from the operation of the act. The legislative purpose there is not to forbid the carrying on of the businesses indicated by the names of the companies excluded, but to prevent insurance and surety companies, and the others named in the excluding provisions of that section, from organizing under that act and from invoking its powers. See Robotham v. Prudential Insurance Co. of America, 64 N. J. Eq. 673, 53 Atl. 842; McCarter, etc., v. Imperial Trustee Co., 72 N. J. Law, 42, 60 Atl. 223; State v. Atlantic City & Shore R. Co., 77 N. J. Law, 465, 479, 72 Atl. 111. The Bethlehem Corporation is not an insurance or surety company, and the guaranty under consideration is not insurance or surety, within the contemplation of that section.

The cases cited by complainant, as authorities in support of its further contention that a corporation may not guarantee, unless power to do so has been expressly granted, on examination will be found to deal with guaranties of the obligations of other persons, natural or artificial, for which there was no other warrant than that it aided an independent business enterprise, the successful operation of which would, or might inure to the pecuniary benefit of the guarantor. Of such citations the following are typical:

Best Brewing Co. v. Klassen, 185 Ill. 37, 57 N. E. 20, 50 L. R. A. 765, 76 Am. St. Rep. 26, wherein the execution of an appeal bond by a brewing company as surety for the benefit of one of its customers was held ultra vires, notwithstanding that some incidental advantage might accrue to the company's business.

Humboldt Min. Co. v. American Mfg., Min. & Milling Co., 62 Fed.

356, 10 C. C. A. 415, wherein a guaranty of performance of another's contract for the erection of a mining plant and accompanying warranties by a company organized to make iron work for mining plants was invalid, though the guarantor by reason of such guaranty, was enabled to sell the iron work used in the plant.

Western Maryland R. Co. v. Blue Ridge Hotel Co., 102 Md. 307, 62 Atl. 351, 2 L. R. A. (N. S.) 887, 111 Am. St. Rep. 362, wherein a guaranty by a railroad company to pay the interest and dividends on the bonds and stock of a hotel company located along the guarantor's line of railway, was held invalid, notwithstanding that the business of the hotel would increase the travel on the railroad, and consequently the receipts of the guarantor.

Davis v. Railroad Co., 131 Mass. 258, 41 Am. Rep. 221, wherein a donation to support a musical festival, upon the well-founded supposition that it would increase the travel on the railroad, was held void, as altogether a too remote benefit.

In none of these cases, or any others brought to the court's attention, were the bonds issued, or the obligations incurred, by a subsidiary of the guarantor, or one of its subsidiaries, nor were the guaranties made pursuant to power expressly conferred on the guarantor to render financial aid to the obligor.

In Ellerman v. Chicago Junction Rys. & Union Stockyards Co., supra, the power of a corporation organized under an earlier New Jersey statute than the one applicable to the Bethlehem Corporation was considered. That statute (Act April 7, 1875 [G. S. N. J. p. 907]) did not expressly authorize corporations to purchase, etc., the shares of stock of other corporations. With reference to such power it was held: First, that a corporation organized thereunder was authorized to include it among the objects specified in its certificate of incorporation; and, second, that, having purchased such stock, it was authorized to guarantee the bonds of a corporation whose stock it had purchased. Concerning the guaranty attacked in that case Green, V. C., said:

"By this means, instead of paying the money itself, which might have been required, it gains a credit for all the years during which these bonds have to run; instead of pledging its own credit directly, as by issuing its own bonds, or debentures, or notes, it lets the Tolleston Company remain the principal debtor, while it assumes the formal position of surety. If it received no consideration and was only guaranteeing for the accommodation of the Tolleston Company, in which it had no interest, the contract would be ultra vires and void—it would be a fraud on the stockholders; but given as part of the consideration, the transaction amounts simply to this: The packers did not exact money, nor even the bonds of the Junction Company for the money; they agreed to accept the direct promise of the Tolleston Company, secured by its mortgage, and a conditional agreement of the Junction Company that the promise should be kept. It is just as lawful for the corporation to give a conditional contract to its creditor to pay him money as it is to give him a contract to pay directly and without provision. It is the business of the creditor to determine whether he will take one or the other. Both are equally binding, if there is consideration for them. The form of the contract is nothing. The whole question turns on the consideration." 49 N. J. Eq. 247, 248, 23 Atl. 297.

In Zabriskie v. Cleveland, Columbus & Cincinnati R. R. Co., 64 U. S. (23 How.) 381, 16 L. Ed. 488, the defendant railway company was

empowered by the Ohio statutes to aid connecting roads by subscribing for their stock, or otherwise, provided such aid should not be furnished until two-thirds of the stock represented and voted at a meeting called by the directors should have assented thereto. The defendant purchased some of the stocks of a connecting railway and indorsed some of its bonds. This guaranty was held to be within the powers of the guaranteeing company. See Louisville, New Albany & Chicago Ry. Co. v. Louisville Trust Co., 174 U. S. 552, 571, 19 Sup. Ct. 817, 43 L. Ed. 1081.

In Tod v. Kentucky Union Land Co. (C. C.) 57 Fed. 47, approved on the point of the present reference, sub nom. Marbury v. Kentucky Union Land Co., 62 Fed. 335, 10 C. C. A. 393, a land company empowered to mine, manufacture, and dispose of the products of its mineral and timber lands, was authorized to effect a consolidation with any railroad company in furtherance of such granted powers, and to exercise the powers of both companies. Instead of so consolidating, it acquired all the capital stock of a railroad company and guaranteed the latter's bonds and dividends on its preferred stocks. It was held that such acquisition of stock was similar to, and included within the express power to consolidate, and that the guaranty was valid as such railroad was necessary to the success of the land company's business.

The opinions in these last-cited cases fully discuss the authorities on the question of corporate power to guarantee and are most important and instructive. The complainant's contention that Bijur v. Standard Distilling & Distributing Co., 74 N. J. Eq. 546, 70 Atl. 934, is opposed to the Ellerman Case on the point here considered, and that Louisville, New Albany & Chicago Ry. Co. v. Louisville Trust Co., 174 U. S. 552, 19 Sup. Ct. 817, 43 L. Ed. 1081, has rendered the Zabriskie Case negligible as an authority for the rule here invoked, is, to my mind, a misconception, as is also its further insistence that the facts of the Tod Case are so different from the instant case as to make it inapplicable as an authority for the position here taken.

There is nothing in these cases, or in any others that have been brought to the court's attention, that in any way qualifies or limits the Ellerman, Zabriskie, or Tod Cases as authorities for the doctrine that where one corporation is authorized to acquire the stock of another, and to aid it in carrying out its objects, a guaranty by the former of the latter's obligations is valid, where it carries forward some of the powers expressly granted to the guaranteeing company. These cases, in my judgment, control the instant case. Irrespective of statutory authority, express or implied, permitting one corporation to guarantee the obligations of another, the cogent reason against the right so to do is that it devotes the credit of the guarantor in a venture not contemplated by the subscribers to its capital stock, and compels them to assume a risk not within the objects for which the guarantor was incorporated. Tod v. Kentucky Union Land Co., supra, 57 Fed. 51. This reason is not present in the guaranty under consideration, as it in no way diverts the trade capital or the credit of the Bethlehem Corporation into channels other than those authorized by its certificate of incorporation. It does not fasten upon the invested capital a charge

or liability other than that contemplated by the subscribers thereto. The liability incurred by the Bethlehem Corporation in guaranteeing the Eastern Company's bonds was not a risking of the former's capital in another's enterprise, but in aid of its own, and over which, through its subsidiaries, it had complete control.

I am therefore of the opinion that the guarantee of the Eastern Company's bonds specifically attacked in the present proceedings is within the corporate powers of the Bethlehem Corporation. With reference to the bill's attack generally upon the powers of the Bethlehem Corporation to guarantee the bonds of other corporations, and to secure the same by a pledge or mortgage of its property, it is sufficient to say that, on this application for a provisional injunction, the answer and supporting affidavits deny any present intention or purpose to guarantee the bonds of any other corporation. However, it is not amiss to add that, if the views here expressed as to the right to make the guaranty specifically challenged are correct, any other guaranty made by the Bethlehem Corporation for a like purpose would be within its powers.

The application for a preliminary injunction is denied.