Copeland *v.* United Shoe Machinery Co. *84 N. J. Eq.*

---

WILLIAM A. COPELAND et al.

*v.*

UNITED SHOE MACHINERY COMPANY et al.

[Decided April 19th, 1915.]

Upon a bill filed by certain preferred and common stockholders of the United Shoe Machinery *Company,* for an injunction to restrain the consummation of the proposed merger of that *company* with the United Shoe Machinery *Corporation,* after an examination of the respective certificates of the incorporation of these two corporations—*Held,* a preliminary injunction will issue restraining the merger until final hearing, first, because the charter of the United Shoe Machinery *Corporation* confers more extensive primary powers than does the charter of the United Shoe Machinery *Company,* and that some of the objects of the *corporation* are not similar to any of the objects of the *company* and, consequently, they cannot under section 104 of the Corporation act (*Comp. Stat. p. 1659*) be merged; and secondly, because the terms of the merger are unfair and inequitable to the preferred stockholders in the event of liquidation or dissolution.

*Mr. Frederick J. Faulks,* for the complainants.

*Mr. Francis Scott* and *Mr. Walter Bates Farr* (of Massachusetts), for the defendants.

STEVENS, V. C.

The only question before me now is whether the situation is such as to require a preliminary injunction restraining the merger of the United Shoe Machinery Company and the United Shoe Machinery Corporation until final hearing.

The agreement of merger bears date January 15th, 1915. It has been approved by the directors of both companies. On February 8th, 1915, notice was given to the stockholders of the United Shoe Machinery *Company* of a special meeting of the stockholders to take action upon it. The complainants, who are preferred and common stockholders, charge in their bill that the United Shoe Machinery *Corporation,* into which it is proposed to merge the United Shoe Machinery *Company,* has acquired more than two-thirds of the preferred and common stock of the latter and will, at the meeting so called, unless prevented by injunction, vote in favor of the adoption of the merger.

Two questions are made. It is said, first, that this is an attempt to merge two companies whose business is or may be dissimilar, and second, that the agreement impairs the legal or equitable rights of the preferred stockholders.

It seems to me that under the case of *Colgate* v. *United States Leather Co., 75 N. J. Eq. 230,* I must hold that the charter of the United Shoe Machinery *Corporation* confers more extensive primary powers than does the charter of the United Shoe Machinery *Company.*

The primary object of the shoe machinery *company* is

"to manufacture, buy, sell, lease, operate and deal in and with all kinds of machinery, tools, implements and mechanical devices and contrivances of every name and nature whatsoever and especially to manufacture, buy, sell, lease, operate and deal in and with all sorts of boot and shoe machinery," &c.

Various incidental powers are conferred, but they seem all to be connected with or incidental to the general object set forth in the above-quoted language.

On the other hand, the charter of the shoe machinery *corporation* declares that the objects for which it is formed are, *inter alia,*

"to construct bridges, buildings, machinery, shops, boats, docks, ships, elevators, waterworks, gas works, and electric works, viaducts, aqueducts, canals and other waterways and other means of transportation and to sell or otherwise dispose of the same or to maintain or operate the same, but not to maintain or operate any railroad or canal in the State of New Jersey."

The concluding clause of the third paragraph is as follows:

"It is declared that the objects and powers specified and the clauses contained in this paragraph 'third' shall be in nowise limited or restricted by reference to or inference from the terms of any other clause of this or any other paragraph in this certificate."

If the above-quoted clause authorizing the corporation to build bridges, boats, cars, gas and electric works and to build and operate railroads and canals anywhere outside of the State of New Jersey confers primary powers, and I do not see how, under the clause last cited, it can, as a matter of construction, be held otherwise, then some of the objects of the *corporation* are not similar to any of the objects of the *company,* and, consequently, they cannot, under section 104 of the Corporation act, be merged.

It is said, in the second place, that the terms of the merger are unfair and inequitable. Whether they are or are not will be determined by the terms of the merger agreement as applied to the particular situation involved. The bill does not fully disclose the situation of the company or the value of its capital stock and assets. It bases itself upon the terms of the agreement.

The company's charter provides that

"in the event of the dissolution of the corporation or the distribution of its assets, the holders of the preferred stock and the holders of the common stock shall share and share alike."

The merger agreement provides (article 9) that each of the shareholders of the United Shoe Machinery Company

"shall be entitled to receive for each share of the common stock * * * , two and one-quarter shares of the stock of the consolidated corporation and for each share of preferred stock * * * one share of the preferred stock of the consolidated corporation."

The charter of the *corporation*, into which the *company* is to be merged, provides that in the event of liquidation or dissolution,

"the holders of the preferred stock shall be entitled to be paid thirty-five dollars per share [the par value being twenty-five dollars] and the unpaid dividends accrued thereon, out of the capital of the corporation or the proceeds thereof before any amount shall be paid therefrom to the holders of the common stock."

It is obvious that whatever be the comparative market value of these respective rights, they are *different*. If the actual value of the stock, and of the property which the stock represents, should greatly exceed the par value of all the stock, preferred and common, then the stockholder would, as far as can now be seen, lose by the merger; if it should fall short of that par value, he would gain. In two cases recently decided by me (*Day* v. *Faulks, 79 N. J. Eq. 66; Ballentine* v. *Young, 79 N. J. Eq. 70*) it appeared that the stock of the companies, which was the subject of the litigation, was selling at a very large premium. Such an agreement, applied to a stock like that of the Singer Manufacturing Company, worth, at the time, six times its par value, would be manifestly unfair to the stockholder. How far extrinsic circumstances, such as these will or ought to enter into the account, when we have to decide the question of its fairness, I need not now determine. It seems to me that enough is shown, both as to this and the question of the voting power, to warrant a preliminary injunction. As far as I can see, little or no harm will result from preserving the *status quo* until final hearing.

Other points have been raised, but it is not now necessary to consider them.