The origin of the present litigation is attributable to the undertaking to merge Magazine Repeating Razor Company, a corporation of New Jersey, and Eversharp, Inc., a corporation of the State of Delaware. The subject of immediate attention is the application of the complainants for a preliminary injunctive order destined to maintain the status quo until the final hearing of the cause. Manifestly the present application must be studied and determined with amenity to the established principles applicable to the allowance of preliminary injunctions.
The consideration of the legal and equitable propriety of a merger of corporations is entered upon with the consciousness that the opportunity to effectuate such a merger is derived solely from statutory authority and that the terms of the proposed combination must be fair and just to the dissenting stockholders of the respective companies.
Formerly the corporate activities of these two companies were independently conducted without any related or affiliated control. The bill charges that in December, 1945, Eversharp acquired and otherwise brought under its predominance approximately 85% of the outstanding preferred stock and about 40% of the outstanding common stock of Magazine. Thereupon eight of the directors of Eversharp became eight of the eleven directors of Magazine. The president, the secretary and the chairman of the board of directors of Eversharp were elected respectively to like offices in Magazine. An agreement for the merger of Magazine into Eversharp, dated February 15th, 1946, was approved by the directors of both corporations.
The complainants, owning in the aggregate 16.011 shares, or approximately 8%, of the common stock of Magazine, demonstrate. However, appropriate corporate action was inaugurated to submit the proposed merger agreement to the stockholders of Magazine at a meeting noticed for March 15th, *Page 22 
1946. The complainants promptly presented their bill of complaint and were awarded an order to show cause addressed to the defendant which permitted the submission of the contemplated merger agreement to the stockholders of Magazine for consideration at the stated meeting, and also allowed the canvass and registration of the votes, but enjoined, ad interim, the consummation of the proposed merger. The proofs indicate that the holders of 160,112.7 shares of the common stock and 7,040.5 shares of the preferred stock, comprising 78.72% of the common and 98.2% of the preferred stock of Magazine voted in favor of the approval of the agreement of merger. At a meeting of the stockholders of Eversharp held on March 18th, 1946, stockholders possessing 77.4% of the total qualified voting authority favored the merger.
A casual evaluation of the merits of the several reasons asserted by the complainants in opposition to the proposed merger draws attention primarily to the insistence that the proposed merger is not authorized or sanctioned by our statutory law.
A study of the privilege of merging corporations discloses that such endeavors were initially disfavored by many who apprehended the evils of a monopolistic tendency that might arise from amalgamations of corporations. Eventually authority to merge domestic corporations was attained. Ultimately legislatures indulged the merger of domestic corporations and those organized in another state. The lineage of our legislation is typified by the statutes here cited: P.L. 1888 p. 441; P.L. 1896 p. 309;P.L. 1918 p. 1013; P.L. 1929 p. 478; R.S. 14:12-1; N.J.S.A.14:12-1.
Endowed with the governmental power to legalize mergers, the legislature ex consequentia can prescribe the terms and conditions. Indeed, as Mr. Justice Swayze remarked, "The legislature is under no compulsion to authorize a merger and it may impose even fanciful conditions; it might, for instance, prescribe that the approval should be written in red ink."American Malt Corp. v. Board of Public Utility Commissioners,86 N.J. Law 668, 670; 92 Atl. Rep. 362.
Our legislature has resolved to confine the authority to merge to those corporations which are organized "for the purpose of carrying on any kind of business of the same or *Page 23 
a similar nature." There are additional restrictions which are not here implicated. R.S. 14:12-1; N.J.S.A. 14:12-1.
The inclusion of the above-quoted phrase in the statute was undoubtedly purposeful. The words have a distinctive, discriminatory and circumambient import. Incidentally I obtain the impression that synonymous words are not embodied in the comparable statute of Delaware. Federal United Corp. v.Havender (Del.), 11 Atl. Rep. 2d 331.
The significance of the statutory limitation cannot, I think, be capriciously mitigated, much less ignored, in exploring thekind of business each corporation was organized to carry on
and thus determine the intrinsic similarity, if any, contemplated by the legislature. I emphasize this topic because in the composition of certificates of incorporation it has now become a common practice to state not only the principal objects actually intended to be pursued by the company, but to ingraft an imaginative variety of irrelative projects nebulously characterized though exorbitantly phrased.
Illustrations are discernible in the certificates of Magazine and Eversharp. In Magazine: "To manufacture, purchase or otherwise acquire, own, mortgage, pledge, sell, assign and transfer, or otherwise dispose of, to invest, trade, deal in and deal with, goods, wares and merchandise and real and personalproperty of every class and description * * *." In Eversharp: "To manufacture, design, construct, buy, obtain or otherwise acquire under license or otherwise, and to sell, license, repair, lease or otherwise dispose of as distributors, retailers, jobbers, wholesalers and dealers * * * goods, wares andmerchandise of every class and description * * *." (Italics mine.)
This custom is not within the spirit and intendment of acts relating to the organization of corporations. R.S. 14:2-3
(d); N.J.S.A. 14:2-3(d); 1 Fletcher, Cyc. of Corp. 364; 33Am. State Reports 178. The statute requiring the objects to be named must mean that they should at least be indicated with some degree of definiteness. The powers truly sought to be exercised should be recognizable in the certificate, from which may be deduced those that are germane and incidental. Ellerman v.Chicago Junction Railways, c., Co., 49 *Page 24 N.J. Eq. 217 (on p. 239); 23 Atl. Rep. 287. No one would suppose that a corporation can be lawfully formed under our statute by a certificate simply declaring that its purpose is "to manufacture and sell every article known or at present unknown to mankind."
It is injudicious to give to shadows the appearance of essential substance. In quest of similarity in the statutory sense, are we to suppose that if the general and indefinitely expressed objects of the one company vaguely envelop the specific primary objects of the other, the required correspondence exists? I think not. To do so in instances where the principal and primary objects of the one are as different from the other as chalk from cheese, would in modern experience result in an easy evasion of the statutory discrimination and would constitute a defiance of the conspicuous policy of the legislature. A statute does not fulfill its function mechanically. It must receive a reasonable construction.
The enterprise actually "carried on" by a company will usually be unequivocally sustained by a correlative specification in the charter, and accordingly a notorious clue is supplied in the discovery of the paramount functional object of the corporation. It is acknowledged that Magazine is engaged in the distribution and sale of Schick Injector safety razors and blades. Eversharp manufactures and vends pens, pencils, writing devices and writing utensils.
The confirmation of that dissimilarity of the veritable and substantive objects of the two corporations becomes at once perceptible upon an inspection of the certificates of incorporation under which the companies have for years operated prior to the prospect of a merger. The prevalent object of each corporation is distinctly recognizable in its charter.
The cardinal object for which the Magazine Company was incorporated is:
"* * * to manufacture, repair, buy, sell, import, export, trade and deal in all classes of cutlery including knives, shears, scissors and razors, and all kinds of sharp-edged tools and implements for clothing, cloak, skirt, waist, shirt and other garment cutters, furriers, hatters, milliners, dressmakers, bookbinders, boot and shoe manufacturers, glaziers, barbers, manicurists, chiropodists, jewelery case makers, *Page 25 
pocket book makers and for all manufacturers and artisans in every trade and calling requiring sharp-edged tools and implements."
The principal object for which Eversharp was organized is:
"To manufacture, design, construct, buy, obtain or otherwise acquire under license or otherwise, and to sell, license, repair, lease or otherwise dispose of as distributors, retailers, jobbers, wholesalers and dealers, and to carry on the business of manufacturers' representatives and sales agents in the United States or any part of the world of pens, pencils, writing devices and utensils."
Additionally Eversharp claims the corporate authority to manufacture and sell "any articles made wholly or in part of rubber, gold, metal, minerals, alloys, glass, leather, fiber or of any modification or combinations of any of said substances or of any artificial compound * * *."
Apart from controversy anyone would assuredly distinguish the businesses for which these companies were organized by the particularization of the dissimilar enterprises as expressed in the charters and by the corroboration engendered by the past operations of each of them.
True, our statutory law permits a corporate charter to be amended to embrace different and additional lawful objects, but it must be accomplished in a direct proceeding taken in pursuance of the legislative enactment. R.S. 14:11-2; N.J.S.A. 14:11-2.
In the case at hand I lay stress upon the fact that the charter of Eversharp has not been amended to definitely empower it to manufacture and sell "cutlery, including knives, shears, scissors and razors and all kinds of sharp-edged tools and implements."Cf. Clarke v. Gold Dust Corp., 106 Fed. Rep. 2d 598;cert. denied, 309 U.S. 671; 84 L.Ed. 1017. It is divulged by the agreement (with no faint significance) that such an amendment is proposed to be made either in concert with, or as a sequence of, the completed merger. Why, if the existing charters are compatible? Certainly the provisions relating to mergers never contemplated, and do not now permit, the required similarity of the kinds of business of the corporations to be spawned simultaneously with and as a constituent part of the proceedings to merge. Indeed, it has been so decided by our Court of Errors and *Page 26 
Appeals in Colgate v. United States Leather Co., 75 N.J. Eq. 229
(on p. 239); 72 Atl. Rep. 126.
Recognizing the state of affairs to be as I have related them, I resort to the precedents. The following reported decisions have relevancy and I must regard them as authoritative: Colgate v.United States Leather Co., supra; William B. Riker Son Co. v.United Drug Co., 79 N.J. Eq. 580; 82 Atl. Rep. 930; Copeland v.United Shoe Machinery Co., 84 N.J. Eq. 276; 94 Atl. Rep. 404;affirmed, 85 N.J. Eq. 209; 95 Atl. Rep. 549; Outwater v. PublicService Corp., 103 N.J. Eq. 461; 143 Atl. Rep. 729; affirmed,104 N.J. Eq. 490; 146 Atl. Rep. 916.
I shall not enhance this memorandum by the addition of quotations from the decisions rendered in the cases just cited. It is sufficient to indicate that in those adjudications will be found the propriety of comparing the primary objects of the corporations. In them the determination is expressed that the power of corporations to merge is not to be implied and exists only by virtue of plain legislative enactment and that corporations which are not organized "for the purpose of carrying on any kind of business of the same or a similar nature" cannot be merged under the provisions of our statute.
I entertain the impression that the basic and fundamental legal right of these corporations to merge is of itself sufficiently controvertible to warrant a preliminary injunctive order.
Other objections to the proposed merger are asserted, notably the intention indirectly and by means of the merger to deprive the complainants of their existing pre-emptive right to purchase stock and their present right of cumulative voting. R.S.14:8-17; N.J.S.A. 14:8-17; R.S. 14:10-15; N.J.S.A. 14:10-15. The fairness of the merger agreement presents a question of a factual nature ordinarily reserved for final hearing. If the alleged injustice of the project were the sole objection, I would be hesitant to substitute preliminary my judgment for that of such a transcendent majority of the stockholders. Other than an interruption of the execution of the plan, I am aware of no material injury to be occasioned by preserving the status quo
until final hearing. The granting or refusal of a preliminary injunction *Page 27 
exacts the exercise of sound judicial discretion in view of all the circumstances of the particular case. "Justice is not served if the subject-matter of the litigation is destroyed or substantially impaired during the pendency of the suit."Christiansen v. Local 680 of the Milk Drivers, c., 127 N.J. Eq. 215,219; 12 Atl. Rep. 2d 170.
An order will be advised enjoining, pendente lite, the further accomplishment of the proposed merger. *Page 28