73 N.J. Super. 56 (1962)
179 A.2d 54
MOSS ESTATE, INC., A CORPORATION OF THE STATE OF NEW YORK, AND HUBERT E. AND ANNE E. ROGERS FOUNDATION, A MEMBERSHIP CORPORATION OF THE STATE OF NEW YORK, PLAINTIFFS,
v.
METAL & THERMIT CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 1, 1962.
*59 Mr. Charles Milton and Mr. Allan H. Klinger for plaintiffs (Messrs. Milton & Keane, attorneys).
Mr. Emory C. Risley for defendant (Messrs. Stryker, Tams & Dill, attorneys).
COLLESTER, J.S.C.
This action was brought by plaintiffs, both corporations of New York, which are the registered owners of 2,257 shares of preferred stock of defendant Metal & Thermit Corporation (M & T) a New Jersey corporation, which stock represents 34.9% of the 6,462 shares of preferred stock authorized, issued and outstanding of the defendant corporation. The action attacked the proposed merger and consolidation of The Udylite Corporation (Udylite), a Delaware corporation, with and into M & T.
The complaint contained two counts, each of which sought the same relief, namely, the issuance of an injunctive order and a declaratory judgment on the legal questions presented.
At the time the complaint was filed officers and directors of M & T had undertaken preliminary measures to bring about the proposed merger and consolidation of Udylite into M & T. No ad interim restraint was sought by plaintiffs, and after defendant's answer was filed plaintiffs moved for summary judgment pursuant to R.R. 4:58 on the ground that upon the pleadings and affidavits filed they were entitled to a judgment as a matter of law since it palpably *60 appeared that there was no genuine issue as to any material fact. At oral argument upon said motion it developed that four days prior thereto the directors of M & T had approved and signed a formal agreement of merger and consolidation and a proxy statement, and had called a meeting of its stockholders to be held on January 11, 1962 for the purpose of taking action on the adoption of such agreement, the call of the meeting being subject to the execution of such agreement by a majority of the directors of Udylite.
The first count of the complaint alleged that under the proposed merger each share of common stock of Udylite (there being no Udylite preferred stock) would be converted into .65 of a share of common stock of M & T. It alleged that there existed no shares of common stock of M & T authorized but unissued and available for the exchange provided for in the merger, and that in order to accomplish such merger it would be necessary to amend the certificate of incorporation of M & T to provide for an increase in its authorized capital stock.
The complaint alleged that article 5 of the certificate of incorporation provided that its capital stock could not be increased without the consent of at least 67% of each class of capital stock actually issued, and that R.S. 14:11-2 required that two-thirds in interest of each class of stockholders having voting power must vote in favor of any amendment to the certificate of incorporation to increase the capital stock of such corporation. Plaintiffs in their complaint and supporting affidavits alleged that since they owned more than one-third of the preferred stock and had voting power, and their representatives having informed M & T's directors that they would vote their stock against the proposed merger and all corporate actions necessary thereto, the completion of the merger would be impossible.
In the second count of the complaint plaintiffs alleged that the proposed reconstitution of the M & T preferred stock provided for in the proposed merger was inequitable, unfair and oppressive to them as preferred stockholders, and *61 constituted an impairment of their contractual rights with M & T corporation.
Plaintiffs sought a judgment enjoining M & T from calling and holding a stockholders' meeting to approve the proposed merger agreement, and to enjoin M & T from doing any act designed to accomplish the merger. They also sought a declaratory judgment declaring that said merger could not be accomplished without an amendment to the certificate of incorporation of M & T requiring the consent of at least 67% of each class of the capital stock actually issued and/or approval of two-thirds in interest of each class of stockholders having voting powers.
Defendant denied the legal contentions asserted by plaintiffs, alleging that it was unnecessary to amend the certificate of incorporation to provide for an increase in its capital stock in order to consummate the merger. It alleged that R.S. 14:12-1 et seq. prescribes the procedure for merger or consolidation of corporations; that under R.S. 14:12-2 the joint agreement between such corporations shall set forth the number of shares of capital stock of the new or consolidated corporation, whether common or preferred, and, if any such stock has nominal or par value, the amount or the par value of such shares; that such agreement shall set forth the manner of converting the capital stock of each of such merging or consolidating corporations into the stock or obligations of the new or consolidated corporation. It further alleged that under R.S. 14:12-3 the merger agreement to be effected must be approved by the stockholders of each of the merging or consolidating corporations at separate meetings called for the purpose of considering the same; that each share of stock entitles the holder to one vote, and that the approval of such a merger or consolidation requires the affirmative vote of the holders of two-thirds of all the capital stock of each of said corporations.
Defendant further asserted that the proposed plan of merger, including the proposed manner of converting plaintiffs' *62 preferred stock into preferred stock of the proposed consolidated corporation, was not inequitable, unfair or oppressive to plaintiffs or an unauthorized impairment of their contractual rights. Defendant in its answer further alleged that plaintiffs' action was premature.
At the oral argument plaintiffs presented no evidence by means of affidavits to show that the proposed plan for the conversion of preferred stock of M & T into the preferred stock of the new consolidated corporation was inequitable. They relied solely upon the terms of the proposed merger agreement. Defendant, on the other hand, submitted various exhibits, including the affidavit of Arthur Palmer, a member of the New York investment banking firm of White, Weld & Co., in support of its contention that the proposed exchange of preferred stock was fair and equitable.
Since the directors of M & T had executed the proposed merger agreement and a proxy statement, and had called a stockholders' meeting to consider the adoption or rejection of the proposed merger between the time of filing of the complaint and answer and the date of oral argument, it was stipulated between the parties that the matter should be submitted to the court as on final hearing on the record before the court. Defendant also withdrew its defense that plaintiffs' action was premature. It was further agreed that the case should be decided by the court as on a motion for summary judgment for plaintiffs and a counter-motion for summary judgment for defendant. The court, upon submission to it of briefs of the parties and having heard oral argument, took the matter under advisement.
Four days later, on December 5, 1961, The Udylite Corporation terminated the plan for the proposed merger and consolidation with M & T by a vote of its board of directors.
Thereafter the following motions were presented to this court:
1. By plaintiffs for an order voluntarily dismissing the action without prejudice, pursuant to R.R. 4:42-1(b).
*63 2. By defendant for an order permitting it to file a supplemental answer and counterclaim, pursuant to R.R. 4:13-4, 4:13-5 and 4:15-4.
3. By defendant for a summary judgment on its demand for relief contained in its counterclaim.
Each party vigorously opposes the granting of the motions sought by his adversary.

I.
The court will deal first with the procedural motions referred to, which were presented subsequent to the motions for summary judgment brought initially by plaintiffs and defendant.
Plaintiffs contend that since the proposed merger was terminated by the action of Udylite, the threat to their rights as preferred stockholders no longer exists. They contend that there is no longer a justiciable controversy before the court and the issues presented in the suit have become moot. They assert that they are therefore entitled to a voluntary dismissal of the proceedings without prejudice under R.R. 4:42-1(b).
The supplemental answer and counterclaim which defendant seeks leave to file pursuant to R.R. 4:15-4, 4:13-4 and 4:13-5 sets forth the transactions and occurrences which have happened since the answer was filed and oral argument was held upon the motion and counter-motion for summary judgment.
The counterclaim seeks affirmative relief for the defendant by means of a declaratory judgment. The relief sought is two-pronged: (1) defendant corporation is entitled to enter into an agreement for merger and consolidation of another corporation with and into defendant corporation upon compliance with the procedures prescribed by R.S. 14:12-2 et seq., without first amending its certificate of incorporation under the procedures prescribed in R.S. 14:11-1 and 14:11-2, and (2) for an adjudication that it is entitled to enter into an agreement for merger and consolidation containing *64 provisions for converting the preferred stock of defendant corporation into preferred stock of the consolidated corporation the same as, or substantially similar to, those contained in the proposed merger agreement between defendant and Udylite.
R.R. 4:42-1(b) provides that an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. R.R. 4:15-4 provides that upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences which have happened since the date of the pleading sought to be supplemented. R.R. 4:13-4 provides that a claim which either matured or was acquired by the pleader after serving his pleading may, with leave of court, be presented as a counterclaim by supplemental pleading. R.R. 4:13-5 provides that when a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment.
When this matter was presented to the court on the oral argument wherein plaintiff sought a summary judgment granting injunctive relief and a declaratory judgment that proceedings pursuant to R.S. 14:11-1 and 14:11-2 to amend the certificate of incorporation of M & T were necessary before a merger agreement could be entered into and consummated, it is undisputed that a justiciable controversy existed. Since Udylite has withdrawn from the proposed transaction, it follows that there is no further occasion for the exercise of this court's injunctive powers. That withdrawal, however, does not alter the fact that vigorously contested adversary claims as to the construction and effect of the various statutes involved and defendant's certificate of incorporation still exist. The question is  should plaintiffs be permitted to voluntarily dismiss their suit and reserve their claims for another day when another *65 proposed merger may arise, or does justice require that defendant should be entitled to an adjudication of such claims by way of declaratory judgment at this time?
Concerning the position taken by plaintiffs, the following statement seems appropriate: "The desire to bargain with a fist-full of undetermined rights may be appropriate at the poker table, but not in our law courts under modern concepts of open litigation." Hartford, etc., Indem. Co. v. Selected Risks Indem. Co., 65 N.J. Super. 328, 333 (App. Div. 1961). It is my opinion that the relief sought by the defendant should be granted, in part.
The Declaratory Judgments Act, N.J.S. 2A:16-50 et seq., is a remedial device designed to expedite the definitive establishment of private rights and duties and thereby forestall the emergence of costly and cumbersome proceedings. Hartford, etc., Indem. Co. v. Selected Risks Indem. Co., supra, at p. 332. See National-Ben Franklin Fire Ins. Co. v. Camden Trust Co., 21 N.J. 16 (1956). The power granted to courts to declare rights, status and other legal relations under the statute is circumscribed by the salutary qualification that the jurisdiction of the courts may not be invoked in the absence of an actual controversy  a justiciable controversy. New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949).
In Trustees of Rutgers College in New Jersey v. Richman, 41 N.J. Super. 259 (Ch. 1956), Judge (now Justice) Schettino stated, at page 284:
"In a declaratory judgment action, no wrong need be proved, but the mere existence of a claim or threat of a possible claim disturbing the peace or freedom of the plaintiff by casting doubt and uncertainty upon the plaintiff's right or status establishes the requisite condition of justiciability." (Emphasis added)
There can be no dispute that a justiciable controversy existed between the parties at the time of oral argument above referred to. I am satisfied that after termination of the proposed merger by the withdrawal of Udylite, plaintiff *66 could still have pressed for a decision on the declaratory judgment it sought concerning the application of the statutes involved pertaining to merger and consolidation.
As before stated, plaintiffs are not entitled to dismiss their action as a matter of right at the present stage of the proceedings, but may do so only by leave of court. R.R. 4:42-1(b). I am of the opinion that such leave should not be granted where the dismissal would result in an injustice to defendant. The suit having been started by plaintiffs and having progressed to its present advanced stage, defendant has a definite interest in the outcome of the action and the adjudication thereof as it relates to the construction of the statutes concerning a proposed merger and consolidation. This controversy should not be shunted aside to await similar proceedings when and if a merger is considered by defendant in the future. If, as defendant contends, plaintiffs' claim is without substance, defendant and its management, directors and stockholders should be free to conduct their affairs without the hazard of further litigation relating to this controversy. On the other hand, if plaintiffs are correct in their claims, defendant and its management, directors and stockholders should know it so they can conduct their affairs accordingly.
It is my opinion that defendant should be and is hereby granted leave to file its supplemental answer and counterclaim as it relates to the controversy pertaining to the construction of the statutes involved and the certificate of incorporation.
As to the remaining claim for relief sought, namely, a declaratory judgment that defendant is entitled to enter into an agreement for merger and consolidation of another corporation with and into the defendant corporation "containing provisions for converting the preferred stock of defendant into preferred stock of the consolidated corporation the same as, or substantially similar to those contained" in the proposed merger agreement with Udylite of November 27, 1961, I am of a different opinion. Under this claim *67 for a declaratory judgment defendant seeks a finding of fact that the provisions of the merger agreement between M & T and Udylite relating to the exchange of preferred stock of M & T for preferred stock of the new consolidated corporation was fair and equitable and did not constitute an impairment of the contractual rights of M & T's preferred stockholders.
The proposed merger agreement with Udylite terminated and came to an end on December 5, 1961. There no longer exists a justiciable controversy concerning the equities or inequities of the preferred stock conversion plan. A determination of that issue, now moot, would be fruitless. There exists no present plan for a merger by M & T with another corporation. The question raised, therefore, is hypothetical.
It is the policy of the courts to refrain from advisory opinions, from deciding moot cases, or generally functioning in the abstract, and "to decide only concrete contested issues conclusively affecting adversary parties in interest." Borchard, Declaratory Judgments (2d ed. 1941), pp. 34-35; New Jersey Turnpike Authority v. Parsons, supra.
Thus, insofar as defendant's counterclaim relates to this issue, the relief sought will be denied and plaintiffs' motion to dismiss the complaint, without prejudice, pursuant to R.R. 4:42-1(b), as it relates to the second count of said complaint, is granted.

II.
We come now to defendant's motion for a summary judgment on its counterclaim. It is conceded that the merger agreement provided that the new, consolidated corporation would have a greater number of shares of capital stock than were authorized under M & T's certificate of incorporation. The authorized number of shares of capital stock of the consolidated corporation would be comprised in the aggregate of (a) the authorized preferred and common stocks of M & T, (b) the number of shares of commmon stock of the *68 consolidated corporation issuable on conversion of the common stock of Udylite, and (c) the number of shares of common stock issuable on conversion of preferred stock under the conversion privilege provided in the merger agreement.
The claim of plaintiffs is that since all of M & T's authorized capital stock has been issued or reserved for issuance to its employees, defendant corporation cannot enter into any agreement for merger or consolidation of another corporation with and into M & T without first amending its certificate of incorporation to provide for an increase in its capital stock required for such merger, by a class vote under R.S. 14:11-2, notwithstanding the fact that the statutory procedure for merger and consolidation, R.S. 14:12-3, requires only approval by two-thirds of the holders of all capital stock, whether voting or non-voting, and not by a class vote.
The capital structure of M & T is comprised of 6,462 shares of preferred stock, par value $50 per share, and 860,000 shares of common stock, par value $5 per share. 809,197 shares of common stock are issued and outstanding, the remaining 50,803 unissued shares being reserved for issuance to employees. The capital represented by the preferred stock is $323,100 as compared to $4,045,985 represented by outstanding common stock. Plaintiffs hold 2,257 shares of said preferred stock, being 34.9% of the 6,462 shares of such stock which are authorized, issued and outstanding. They thus represent less than 0.3% of the number of shares of stock outstanding; the capital represented by their shares is about 2 1/2% of the capital of M & T, and about 0.55% of the total stockholders' equity in the capital and surplus of M & T.
The certificate of incorporation of M & T provides in paragraph Fifth (E):
"The capital stock shall not be increased without the consent of at least sixty-seven per cent (67%) of each class of the capital stock actually issued."
*69 R.S. 14:11-1 provides that a corporation may amend its certificate of incorporation to increase its capital stock, and R.S. 14:11-2 provides that to so amend the certificate of incorporation two-thirds in interest of each class of stockholders having voting powers must vote in favor thereof.
Thus it is clear that the plaintiffs who own 34.9% of the preferred stock have a veto power over such amendments to the corporate charter.
The issue is whether or not this minority interest of preferred stockholders thus possesses the same "veto power" as to a proposed merger and consolidation. Plaintiffs' contention raises a question of law, namely, whether the statutory procedure for merger and consolidation, R.S. 14:12-2 et seq., imposes any requirement that the certificate of incorporation must be so amended pursuant to R.S. 14:11-1 and 2 to provide for an increase in capital resulting from a merger, or whether R.S. 14:12-2 et seq. authorizes the agreement for merger and consolidation to create adequate stock with which to accomplish the merger and consolidation.
It should first be noted that the provisions relating to merger and consolidation, and the procedure therefor, are dealt with in chapter 12 of Title 14 of the Revised Statutes, whereas amendments to the corporate charter and the procedure therefor are dealt with in chapter 11 of Title 14. These chapters deal with entirely separate and distinct subject matters, and different procedures and stockholder votes are prescribed for the respective situations. Of particular concern in the present case is the required stockholder vote on a merger and consolidation of "two-thirds of the holders of all the capital stock," whether such stock is voting or non-voting stock, as contrasted with the requirement on amendments of "two-thirds of each class of stock having voting powers." Since the two chapters operate independently with respect to two different subject matters, there is no conflict between the respective provisions which needs to be resolved.
*70 The provisions of chapter 12 of Title 14 prescribe a complete integrated procedure for accomplishing the merger or consolidation of corporations and the consequences thereof. R.S. 14:12-2 provides that the directors of the several corporations proposing to merge or consolidate shall enter into a joint agreement for their merger or consolidation prescribing the terms and conditions of the merger or consolidation and the mode of carrying it into effect. Of particular significance in the matter sub judice are the subsections of the statute which provide that the following information must be contained in the joint agreement.
"d. The number of shares of the capital stock of the new or consolidated corporation, whether common or preferred, and, if any such stock has nominal or par value, the amount of the par value of such shares;
e. The manner of converting the capital stock of each of such merging or consolidating corporations into the stock or obligations of the new or consolidated corporation;" (Emphasis added)
The use of the word "converting" in R.S. 14:12-2(e) supra, shows that the agreement of merger and consolidation is controlling as to the capital structure of the combining corporations, for a well understood meaning of the word "convert" is to alter in form, substance and quality. See Federal United Corporation v. Havender, 24 Del. Ch. 318, 11 A.2d 331, 338 (Del. Sup. Ct. 1940), construing the language of the Delaware statute similar to R.S. 14:12-2(e).
R.S. 14:12-3 provides that the joint agreement to merge or consolidate must be approved by a vote of the holders of two-thirds of all the capital stock of each of the merging or consolidating corporations. This clearly means all capital stock voting or non-voting. It is not a class vote. Where the Legislature intended to require a class vote by holders of stocks having voting powers on a particular proposal, it expressly so provided. See R.S. 14:3-5, 14:8-5, 14:8-6, 14:8-17, 14:9-2.
R.S. 14:12-5 provides that when a merger or consolidation is effected, the rights, privileges, powers, franchises, *71 property assets and interests of each of such corporations "shall vest in the consolidated corporation as effectually as they were vested in the several and respective former corporations." (Emphasis added) This clearly shows that in the statutory concept a "consolidated corporation" is one resulting from a "merger" or a "consolidation," and that the corporation resulting from either is different from the constituent corporations.
R.S. 14:12-8 provides that when two or more corporations are merged or consolidated:
"The consolidated corporation may issue bonds * * * and may issue capital stock, either common or preferred, or both, to such an amount as may be necessary, to the stockholders of the merging or consolidating corporations in exchange or payment of their original shares, in the manner specified in the agreement of merger or consolidation * * *." (Emphasis added)
Plaintiffs contend that the word "issue," as used in R.S. 14:12-8, means issue "if authorized and available," not "authorize and issue." I cannot agree with this argument. Certainly, a grant of power and authority to issue the stock, which the statute expressly gives, necessarily includes a grant of power to authorize such issuance.
R.S. 14:16-1 provides that on the filing of any certificate or other papers relative to corporations in the office of the Secretary of State there shall be paid certain fees. The statute specifically provides for fees on the consolidation and merger of corporations  "for each thousand dollars of capital beyond the total authorized capital of the corporations merged or consolidated." (Emphasis added)
Clearly, the agreement of merger and consolidation may establish an authorized capital stock of the consolidated corporation different from the authorized capital stock of any corporate party to the merger, and without limitation or restriction by the certificate of incorporation of any former corporation which is a party to the merger and consolidation *72 and without any requirement of amendment of the certificate of incorporation of such merging corporations.
Plaintiffs rely primarily upon Colgate v. United States Leather Co., 75 N.J. Eq. 229 (E. & A. 1909), Imperial Trust Co. v. Magazine Repeating Razor Co., 138 N.J. Eq. 20 (Ch. 1946), and Copeland v. United Shoe Machinery Co., 84 N.J. Eq. 276 (Ch. 1915), affirmed 85 N.J. Eq. 209 (E. & A. 1915), in support of their position that an amendment to the certificate of incorporation must be effected before a merger will be permitted, where under the proposed merger additional capital stock must be issued. In my opinion, these decisions have no bearing upon the issues in the present case. They dealt only with the provision of R.S. 14:12-1 in which the power to merge or consolidate is granted to corporations organized "for the purpose of carrying on any kind of business of the same or similar nature," and held that the required similarity must be found in the respective corporate charters before the execution of the agreement of merger and consolidation. They go no further than that.
I will grant defendant's motion for summary judgment holding:
(1) The provisions of R.S. 14:12-1 et seq. expressly authorize an agreement of merger and consolidation to prescribe the amount, terms and provisions of the stocks into which the stocks of M & T and any corporation merging with and into it would be converted upon the merger and consolidation.
(2) That no amendment to the certificate of incorporation of M & T is necessary to provide for the stock of the consolidated corporation.
(3) That approval of an agreement of merger and consolidation by the holders of two-thirds in interest of all the capital stock authorized, issued and outstanding of each of the constituent corporations is the only stockholder approval that is required.
*73 As before stated, plaintiffs' motion to dismiss the second count of the complaint on the ground that the issue contained therein is moot will be granted without prejudice, as well as their application for injunctive relief.
No costs will be allowed to either party, and a judgment in accord with this opinion will be presented, consented to as to form or on notice pursuant to R.R. 4:55-1.